IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

DONNELL HARRIS,

Plaintiff,

v.

Civil Action No.
9:07-CV-0358 (LEK/DEP)

T. ASHLAW, *et al.,*

Defendants.

---

APPEARANCES: OF COUNSEL:

FOR PLAINTIFF:

DONNELL HARRIS, *Pro Se*

FOR DEFENDANT:

HON. ANDREW M. CUOMO
Attorney General of
the State of New York
The Capitol
Albany, NY 12224

MEGHAN M. BROWN, ESQ.
Assistant Attorney General

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT-RECOMMENDATION AND ORDER

Plaintiff Donnell Harris, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983, claiming deprivation of his civil rights. At the center of plaintiff's complaint is his assertion that certain of the defendants tampered with one of his meals, and that when he complained and requested to see a high ranking corrections official in order to register a complaint regarding the matter he was ordered to exit his cell and, after refusing to do so, was forcibly extracted through the use of a chemical agent. Plaintiff's complaint asserts claims of cruel and unusual punishment, in violation of the Eighth Amendment, based both upon the defendants' alleged tampering with his food and their purported use of excessive force, and seeks injunctive relief as well as an award of compensatory and punitive damages.

Currently pending before the court is a motion by the defendants seeking dismissal of plaintiff's claims for failure to state a cause of action upon which relief may be granted. Having carefully reviewed plaintiff's complaint, in the light of defendants' motion – which plaintiff has failed to oppose – I recommend that the motion be granted.

## I. BACKGROUND[1]

[1] In light of the procedural posture of this case, the following recitation is drawn from plaintiff's complaint, the contents of which for now must be accepted as true. *See Erickson v. Pardus*, __U.S. __, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

_____Plaintiff is a prison inmate entrusted to the custody of the New York State Department of Correctional Services (the "DOCS"); at the times relevant to his claims, plaintiff was designated by the DOCS to the Upstate Correctional Facility ("Upstate"), located in Malone, New York. Complaint (Dkt. No. 1) at pp. 1, 7. Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day. *See Samuels v. Selsky*, No. 01 CIV. 8235, 2002 WL 31040370, at *4 n. 11 (S.D.N.Y. Sept. 12, 2002).

On the morning of December 27, 2006, while at Upstate, plaintiff received a meal delivered to his cell by defendants T. Ashlaw and B. Snell, two corrections officers employed at the facility. Complaint (Dkt. No. 1), ¶ 6 A. After observing the two corrections officers "do something" to his water in the process, plaintiff requested a replacement water. *Id.* That request was denied, plaintiff's water was knocked off the feed-up slot and, apparently after delivery of his food tray, his milk and juice were placed on the floor in front of his cell. *Id.* After Corrections Officers Ashlaw and Snell left the area, plaintiff noticed that the spoon on his tray was broken, the seal on his peanut butter was compromised, and his

bread had what appeared to be finger holes in it. Complaint (Dkt. No. 1) ¶ 6 B. When plaintiff attempted to complain to defendants Ashlaw and Snell regarding the matter, his complaints were ignored. *Id.*

Matters apparently escalated when plaintiff once again complained to defendant Ashlaw, who had come to retrieve his tray, and, after not receiving satisfactory response from the officer, demanded to see a higher ranking officer in order to complain regarding his food. *Id.* ¶¶ C-F. While in the process of voicing complaints to a corrections lieutenant and corrections captain who had arrived on the scene, plaintiff was directed to exit his cell and advised that corrections officers intended to conduct a search of his cell. *Id.* ¶¶ F, G. In defiance over the refusal of corrections officers to listen to his complaints, plaintiff placed his tray on his table and walked to the back of his cell, ignoring the orders of corrections officers to exit. *Id.*

As a result of plaintiff's refusal to exit his cell, corrections officers contacted Upstate Superintendent R. Woods for the purpose of requesting permission to use gas to assist in extricating the plaintiff from his cell. Complaint (Dkt. No. 1) ¶ 6 H. After the requisite authorization was given by defendant Woods, a chemical substance was introduced into plaintiff's

cell, eventually forcing him to come to the front, where he was handcuffed and removed. *Id.* ¶ H.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on April 4, 2007. Dkt. No. 1. Named as defendants in plaintiff's complaint are Upstate Superintendent R. Woods; Corrections Captain Quinn; Corrections Lieutenant Anctil; Corrections Sergeant S. Thompson; and T. Ashlaw and B. Snell, two corrections officers at the facility.

In response to plaintiff's complaint, defendants moved on August 9, 2007 seeking dismissal of his complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that plaintiff's claims fail to rise to a level of constitutional significance. Dkt. No. 19. Plaintiff has since failed to submit any papers in opposition to defendants' motion, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).[2] *See also* Fed. R. Civ.

---

[2] Plaintiff's failure to respond to the pending motion does not preclude me from recommending its disposition without the benefit of his submission. *See*, *e.g., White v. Mitchell,* No. 99-CV-8519, 2001 WL 64756, at *1 (E.D.N.Y. Jan. 18, 2001). Such a motion to dismiss tests only the legal sufficiency of the plaintiff's complaint; accordingly, since the plaintiff has been afforded a reasonable opportunity to respond to the motion, but has failed to avail himself of that chance, the court can now determine the complaint's sufficiency as a matter of law based on its own reading of

P. 72(b).

## III. DISCUSSION

### A. Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements. Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly*,

---

the complaint and knowledge of the case law. *McCall v. Pataki,* 232 F.3d 321, 322-23 (2d Cir. 2000). It should be noted, however, that plaintiff's failure to respond in opposition to the pending motion is not without significance; under this court's local rules, a party's failure to respond to a properly filed motion can constitute consent to the granting of that motion, so long as the court determines that the moving party has met its burden demonstrating entitlement to the relief requested. N.D.N.Y.L.R. 7.1(b)(3); *see also McCall*, 232 F.3d at 322-23 (holding that plaintiff's failure to respond to motion to dismiss in and of itself could not constitute basis for dismissal if plaintiff's complaint stated a claim for relief); *White,* 2001 WL 64756, at n. 2 (citing *McCall*).

__ U.S. __, 127 S. Ct. 1955, 1964 (2007) (other quotations omitted)); *cf. Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible"). Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim. *Twombly*, 127 S. Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1722, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a

motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (other quotations omitted)). Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Twombly*, 127 S. Ct. at 1969, 1974.

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 127 S. Ct. at 2200 ("'[A] *pro se* complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.). In the event of a perceived

deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

B. Cruel and Unusual Punishment

The two components of plaintiff's complaint, asserting constitutional deprivations growing out of defendants' tampering with his food and their use of excessive force to remove him from his cell, both implicate the Eighth Amendment's prohibition against cruel and unusual punishment. In their motion, defendants challenge the sufficiency of both aspects of plaintiff's Eighth Amendment claim.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976) (citations and quotations omitted); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*). While the Eighth

Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "'sufficiently serious'" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "'deliberate indifference.'" *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297-98, 111 S. Ct. 2321, 2323-24 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally, Wilson*, 501 U.S. 294, 111 S. Ct. 2321. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511

U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

1. Food Tampering

It is by now well-accepted that an inmate's Eighth Amendment rights may be abridged through service of food, either in insufficient quantity or which is contaminated, provided that through their actions prison officials create an imminent danger to the inmate's health and well-being. *See, e.g.*, *Robles v. Coughlin,* 725 F.2d 12, 15-16 (2d Cir. 1983) (allegations that defendant refused to feed the plaintiffs on twelve days, three of which were consecutive within a fifty-three day period, and additionally contaminated inmate meals with "dust, rocks, glass and human waste", found sufficient to withstand routine, *in forma pauperis* scrutiny under 28 U.S.C. § 1915(d)); *see also, e.g., Griffin v. Smith,* 493 F. Supp. 129, 131 (W.D.N.Y. 1980) (allegations of "unsanitary food utensils, including cigarette burns and hair on food trays" found sufficient to state a cognizable claim); *Murphy v. Weaton,* 381 F. Supp. 1252, 1261 (N.D. Ill. 1974) (allegations involving spoiled, rotted and foul food served in uncleaned wagon used to dispose of garbage found sufficient to state a claim).

The mere allegation of food tampering alone, however, is insufficient

to establish a claim under the Eighth Amendment. To state a cognizable claim under the Eighth Amendment in such circumstances, a plaintiff must allege he or she suffered "'distinct and palpable injury.'" *M.F. v. Reish,* No. 95 CIV 4904, 1996 WL 345953, at *4 (S.D.N.Y. June 21, 1996) (citing *Warth v. Seldin,* 422 U.S. 490, 501, 95 S. Ct. 2197, 2206 (1975)). Accordingly, inmate suits predicated upon claims of adulterated food brought under the Eighth Amendment are subject to dismissal where the plaintiff fails to allege he or she was actually harmed by food tampering. *McNatt v. Unit Manager Parker,* No. 3:99 CV 1397, 2000 WL 307000, at *6 (D. Conn. Jan. 18, 2000) (inmates failed to state a cognizable claim when failing to allege ill effects from reduced food portions); *Reish,* 1996 WL 345953, at *4 (no actual injury where plaintiffs allege numerous incidents of food tampering by defendants and that defendants served food "riddled with rodent excrement", but did not allege that they were actually harmed by such food) (quotations omitted); *but see Moncrieffe v. Witbeck,* No. 97-CV-253, 2000 WL 949457, at *6-7 (N.D.N.Y. June 29, 2000) (Mordue, J.) (allegations that defendants denied the plaintiff food on six occasions and on at least two others contaminated his food with spit or perfume found sufficient to raise issue of fact regarding Eighth Amendment violation for purposes of summary judgment motion).

In this instance plaintiff's food tampering claim has as its focus one incident, occurring on December 27, 2006, although he additionally asserts in passing that he experienced similar "foul play" [to his] food" on four other occasions during the period between approximately September 21, 2006 and November 14, 2006. Complaint (Dkt. No. 1) ¶ 6 I. Because plaintiff has not alleged in his complaint that he received nutritionally inadequate food, or that it was prepared or served in a manner presenting an imminent danger to his health and well-being, this aspect of his Eighth Amendment claim is legally deficient. *Quintana v. McCoy*, No. 9:03-CV-0924, 2006 WL 2827673, at *6 (N.D.N.Y. Sept. 29, 2006) (McAvoy, S.J. and Treece, M.J.). Accordingly, I find that plaintiff's food tampering claim, although alleging conduct which is both despicable and surely remediable through other channels, fails to rise to a level of constitutional significance, and therefore recommend its dismissal.

2. Excessive Force

As was previously noted, Eighth Amendment analysis requires both objective and subjective examinations. *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S. Ct. 995, 999 (1992); *Wilson*, 501 U.S. at 298-99, 111 S. Ct. at 2324; *Griffen v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999). The objective prong of the inquiry is contextual, and relies upon "contemporary

standards of decency." *Hudson*, 503 U.S. at 8, 112 S. Ct. at 1000 (quoting *Estelle*, 429 U.S. at 103, 97 S. Ct. at 290).

The primary focus of defendant's motion addressing plaintiff's excessive force claim is upon the subjective element of the prescribed analysis. Under that test, a plaintiff's constitutional right against cruel and unusual punishment is violated by an "*unnecessary and wanton* infliction of pain." *Whitley,* 475 U.S. at 319, 106 S. Ct. at 1084 (emphasis added) (citations and quotations omitted); *Griffen,* 193 F.3d at 91. The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson,* 503 U.S. at 6-7, 112 S. Ct. at 998 (applying *Whitley* to all excessive force claims); *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom.*, *John v. Johnson*, 414 U.S. 1033, 94 S. Ct. 462 (1973)).

To prevail on his excessive force claim, the plaintiff must therefore establish that defendants acted with a sufficiently culpable state of mind. *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (citing *Hudson*, 503 U.S. at 8, 112 S. Ct. at 999). That determination is informed by four factors,

including 1) the need for application of force; 2) the relationship between that need and the amount of force used; 3) the threat reasonably perceived by the responsible officials; and 4) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085. The principal focus of this inquiry "turns on 'whether force was applied in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085 (quoting *Johnson,* 481 F.2d at 1033). When considering the subjective element of the governing Eighth Amendment test, a court must consider that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness since, as the Supreme Court has noted,

> [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000 (citations omitted); *Velasquez v. O'Keefe*, 899 F. Supp. 972, 973 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000); *see Romaine v. Rewson,* 140 F. Supp. 2d 204, 211 (N.D.N.Y. 2001) (Kahn, J.). Even a *de minimis* use

of physical force can constitute cruel and unusual punishment if it is "repugnant to the conscience of mankind."[3] *Hudson*, 503 U.S. at 9-10, 112 S. Ct. at 1000 (citations and quotations omitted).

In this instance, the plaintiff himself acknowledges that the use of chemicals to extract him from his cell was the direct result of his refusal to obey an order issued by corrections officials to exit his cell. While plaintiff may have believed that his defiance of defendants' direct order was justified, it does not shield him from the consequences associated with his refusal to comply. *See generally* Inmate Rule 106.10[4] (stating that "[a]n inmate shall obey all orders of department personnel promptly and without argument"); *Holmes v. Taylor*, No. 04-CV-1299, 2007 WL 965440, at *6 (N.D.N.Y. Mar. 30, 2007) (Kahn, D.J. and Di Bianco, M.J.) (noting that the requirement that inmates obey direct orders serves a legitimate penological interest). Plaintiff's complaint itself plainly reflects that it was

---

[3] It should be noted, however, that in practice a truly *de minimis* use of force will rarely suffice to state a constitutional claim. *Hudson,* 503 U.S. at 9-10, 112 S. Ct. at 1000 ("[Not] every malevolent touch by a prison guard gives rise to a federal cause of action."); *Griffen*, 193 F.3d at 91 (citing *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir. 1993)); *Johnson*, 481 F.2d at 1033 ("Not every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").

[4] Inmate Rules are part of the Standards of Inmate Behavior in All Facilities, published as Part 270 of Title 7 of the New York Code of Rules and Regulations, 7 N.Y.C.R.R. § 270.2(B).

in response to his insubordination, and the corresponding need of prison officials to enforce their directive and maintain discipline and order within the facility, that force was applied to remove him from his cell. Plaintiff's complaint does not allege that the measures taken to insure his compliance with the order that he exit his cell were excessive or unwarranted, or that less drastic measures would have served to accomplish the same purpose. Under the circumstances, plaintiff is not well-positioned to assert that prison officials violated his constitutional rights through the use of relatively modest force to obtain his compliance with a lawful directive that he exit his cell. *See Brown v. Busch*, 954 F. Supp. 588, (W.D.N.Y. 1997) (determining that prison officials had not used excessive force against inmate, who had refused to comply with a direct order and was housed in the most secure unit of maximum security prison, where officials forced inmate back into his cell by allegedly pushing, shoving, and striking him). Accordingly, I conclude that plaintiff's complaint fails to allege the use by prison officials of force rising to a level sufficient to establish an Eighth Amendment violation.[5]

## IV. SUMMARY AND RECOMMENDATION

---

[5] In light of my recommendation regarding plaintiff's Eighth Amendment claims, I find it unnecessary to address defendants' contention that they are entitled to qualified immunity. *See* Defendants' Memorandum (Dkt. No. 19-2) at 8-10.

Plaintiff's complaint, which alleges that his food was modestly tampered with by prison officials on roughly five separate occasions over a four month period, fails to allege that he suffered any injury or adverse consequences associated with that tampering, and thus fails to establish an Eighth Amendment claim of cruel and unusual punishment. The second prong of plaintiff's complaint, alleging the unlawful use of excessive force to remove him from the cell, similarly fails to state a cognizable claim in light of the fact that, by his own account, it was his own refusal to obey a proper order of prison officials that precipitated defendants' response and necessitated the use of force to remove him from his cell after he refused to exit voluntarily. Under these circumstances, I recommend that defendants' motion be granted and plaintiff's complaint be dismissed, though with leave to replead. *See Branum*, 927 F.2d at 704-05.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion to dismiss plaintiff' complaint (Dkt. No. 19) be GRANTED, and that plaintiff's complaint be DISMISSED in all respects, with leave to replead; and it is further

ORDERED that defendants' request to stay discovery in this matter pending the court's final determination of this motion, as articulated in their

memorandum of law in support thereof, is GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: November 14, 2007
Syracuse, NY

David E. Peebles
U.S. Magistrate Judge